TOWN OF WESTFIELD, EYARE M. HUTSON, PROSECUTOR, v. MORRIS MILGRAM, DEFENDANT.

Argued January 7, 1939—Decided February 24, 1939.

For the prosecutor, *Paul Q. Oliver.*

For the defendant, *Richard F. Green.*

CASE, J.  This is a review of the conviction of Morris Milgram by the town recorder on a charge that on Clark street, in the vicinity of the Roosevelt Junior High School,

within the town of Westfield, the defendant "did canvass and distribute certain circulars or other matter without having first received a permit from the Chief of Police or the officer in charge at Police Headquarters for so doing; in violation of section 1 of the ordinance  *  *  *." The ordinance provided:

"Be It Ordained by the Council of the Town of Westfield, in the County of Union, as follows:

"Section 1. No person, except as in this ordinance provided, shall canvass, solicit, distribute circulars or other matter, or call from house to house in the Town of Westfield without first having reported to and received a written permit from the Chief of Police or the officer in charge at Police Headquarters.

"Section 2. The Chief of Police or, in his absence the officer in charge at Police Headquarters, shall have power to grant permits to canvass, which permits shall specify the number of hours or days the permit will be in effect, and such officer shall refuse to issue a permit in all cases where the application of the canvasser or further investigation, to be made at the discretion of such officer, shows that the canvasser is not of good character or that he is canvassing for a project not free from fraud. The Chief of Police or, in his absence, the officer in charge at Police Headquarters, shall revoke the permit for failure or refusal on the part of the permittee to observe the rules and regulations herein set forth.

"Section 3. Before the permit may be issued the canvasser shall make an application to canvass, giving his or her full name and address, age, height, weight, place of birth, whether married or single, length and place of residence, whether or not previously arrested or convicted of crime, by whom employed, address of employer, clothing worn and a description of the project for which he or she is canvassing. Each applicant shall be finger printed and photographed before a permit shall be issued.

"Section 4. Rules and Regulations.

"No person shall canvass within the Town, except between the hours of 9 A. M. and 5 P. M. A copy of the permittee's

photograph shall be carried on his permit, which permit and
photograph shall be furnished by the Police Department at
no cost to the applicant. The permittee shall exhibit his or
her permit to any police officer or other person upon request.
The permittee shall be courteous to all persons in canvassing
and shall not importune or annoy any of the inhabitants of
the Town and shall conduct himself or herself in a lawful
manner. On expiration of the permit the holder thereof
shall surrender the same to the officer in charge at Police
Headquarters."

There were two additional paragraphs which seem not to
be of importance in this discussion. The violation, according
to the evidence, consisted of the mere handing out of circu-
lars to persons who were assembling for an adult evening
class. The distribution was of a handbill, sponsored by the
Workers Defense League of Union County, announcing a
discussion by named speakers, to be held in the auditorium
of one of the Elizabeth school buildings, of the questions
"What do the German religious persecutions mean? Is there
a Fascist movement in this country? What does Fascism
mean to the average American?" The prosecutor disclaims
any contention that the circulars contained objectionable
matter.

I find that there was neither canvassing, soliciting nor
house to house calling. The facts are, therefore, clearly dis-
tinguishable from those in *Town of Irvington* v. *Schneider,*
120 *N. J. L.* 460 (*affirmed,* 121 *Id.* 542, under the title of
State v. Schneider), *Semansky* v. *Common Pleas,* 13 *N. J.
Mis. R.* 589, and *Dzialkiewicz* v. *Maplewood,* 115 *N. J. L.* 37.
The structure of the ordinance is such that, for the reasons
given below, I am convinced that the ordinance was not
intended, and ought not be made, to apply to distribution
independent of canvassing, solicitation or house to house
calling.

The word "distribute" occurs nowhere in the ordinance
except in the first paragraph and there only in collocation
with the phrases just mentioned. The second section, having
to do with the issue of permits, speaks only of "permits to

canvass," "the canvasser" and "canvassing." The third section, containing the rather drastic provisions with which the applicant must comply, mentions only "the canvasser" and "canvassing." Also, the fourth section relates only, in terms, to "canvass" and "canvassing." While reasonable restrictions may be imposed upon the distribution of circulars, I deem it open to question whether it would be reasonable to impose the burdensome and inquisitorial conditions contained within section 3 of the ordinance upon an individual who desires only to hand out unobjectionable notices of a meeting to persons who may be regarded as potentially interested in the subject-matter. *Cf. Coughlin* v. *Sullivan,* 100 *N. J. L.* 42. What likely consequences of such an act are so sinister as to justify a command that the person present himself preliminarily at police headquarters, give his age, weight, place of birth, marital status, record as to previous arrest or conviction, employer's name and address, the items of his wearing apparel, a description of the project and, in addition, that he submit to being fingerprinted and photographed? I am not informed. The relationship between the need and the procedure is sufficiently obscure to present a constitutional question under the First, as related to the Fourteenth, Amendment to the Federal Constitution and article I, paragraph 5 of our State Constitution and thus to create a doubt as to whether the ordinance was intended to do that for which prosecutor contends. Putting this doubt with the actual wording of the municipal mandate, my conclusion is that the ordinance was not intended to, and does not, apply to any act which Milgram is shown to have committed.

The judgment of conviction will be reversed, and the defendant discharged.